UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                              Plaintiff,<br><br>v.<br><br>ARTURO LARA-VILLARUYA,<br><br>                              Defendant. | Case No.: 3:18-cr-03425-GPC<br><br>**ORDER DENYING MOTION AND SUPPLEMENTAL MOTION FOR COMPASSTIONATE RELEASE**<br><br>**[ECF Nos. 101, 111].** |

**I. INTRODUCTION**

Defendant Arturo Lara-Villaruya filed a *pro se* motion seeking compassionate release or reduction of his sentence under 18 U.S.C. § 3582(c) ("Motion"). (ECF No. 101.) Following his Motion, the Court appointed counsel to assist Defendant in seeking compassionate release. (ECF Nos. 102, 109). On July 27, 2020, the Government filed a response in opposition ("Opp.") to Defendant's Motion. (ECF No. 105.) On September 11, 2020, Defendant, through counsel, filed a Reply. (ECF No. 110.) On October 14, 2020, Defendant filed a supplemental motion to reduce sentence ("Supplemental Motion"). (ECF No. 111.) For the reasons that follow, Defendant's Motion and Supplemental Motion are DENIED.

1

## II. BACKGROUND

Defendant was convicted by jury verdict of one count each of possession of methamphetamine with intent to distribute and possession of fentanyl with intent to distribute in violation of 21 U.S.C. § 841 (A)(1). (ECF Nos. 50, 91.) Defendant was sentenced to 57 months imprisonment followed by a three-year period of supervised release. (ECF No. 91.) Defendant is presently housed at the Safford Federal Correctional Institution ("SFCI") and as of the time of this Order, has served approximately sixteen months, or about 28% of his 57-month sentence. (Opp. at 6.)

Defendant is a 59-year-old Latino man and states that he suffers from poor blood circulation and osteoporosis, and is pre-diabetic. (ECF No. 101 at 6, 17; ECF No. 110 at 7–8.) Defendant states that his medical conditions are deteriorating while he is in custody, that he is unable to get the treatments he needs while incarcerated because of delays resulting from the COVID-19 pandemic, and that he is at higher risk of serious illness should he contract COVID-19 while in custody. (ECF No. 101 at 7; ECF No. 110 at 7–8) Defendant also asserts he is the only caregiver for his mother, who suffers from a heart condition and "advanced Alzheimer's disease," requires "assistance with daily living," is "unable to be left alone," and needs "constant care." (ECF No. 110 at 5.) Defendant states his brother used to care for his mother but is no longer able to do so given his recent illness and heart failure, and that his wife and sister are unable to provide caregiving assistance for Defendant's mother due to their respective childcare obligations and health conditions, and that his elderly stepfather cannot provide the assistance his mother requires. (*Id.*; ECF No. 110-1, Ex. A.) In his Supplemental Motion, Defendant explains that his daughter recently experienced a serious health crisis, which has left her hospitalized in the intensive care unit in critical condition. (ECF No. 111 at 3–4.)

Defendant now petitions this Court for compassionate release on two bases: (1) his health issues and (2) his family circumstances, particularly the caretaking needs of his mother and daughter. (ECF Nos. 101, 110, 111.)

\ \ \

## III. DISCUSSION

Defendant moves for release under 18 U.S.C. § 3582(c)(1)(A), which provides, in relevant part:

> The court may not modify a term of imprisonment once it has been imposed except that—
> (1) in any case—
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>    (i)   extraordinary and compelling reasons warrant such a reduction; or
>    (ii)  the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Accordingly, the Court must consider two questions: first, whether Defendant has fulfilled the administrative exhaustion requirement; second, whether Defendant has demonstrated extraordinary and compelling reasons for a sentence reduction.

The First Step Act of 2018, Pub. L. No. 115-39, 132 Stat. 5194, "amends numerous portions of the U.S. Code to promote rehabilitation of prisoners and

unwind decades of mass incarceration. *United States v. Brown*, 411 F. Supp. 3d 446, 448 (S.D. Iowa 2019) (citing Cong. Research Serv., R45558, The First Step Act of 2018: An Overview 1 (2019)). One of the changes resulting from the Act is that it "allows defendants, for the first time, to petition district courts directly for compassionate release." *Id.* As one district court recently provided:

> The effect of the amendments is that a district judge has the ability to grant a prisoner's motion for compassionate release even in the face of BOP opposition or its failure to respond to a prisoner's request for compassionate release in a timely manner . . . . Congress's express purpose in implementing these changes was to expand the use of compassionate release sentence reductions under § 3582(c)(1)(A). *See e.g.* First Step Act, PL 115-391, 132 Stat 5194, 5239 (titling the subsection amending § 3582, "Increasing the Transparency and Use of Compassionate Release"); 164 Cong. Rec. S7314-02, 2018 WL 6350790 (Dec. 5, 2018) (statement by Senator Cardin, cosponsor of the First Step Act, noting that its purpose was to "expand[s] compassionate release" and "expedite[] compassionate release applications").

*United States v. Young*, No. 2:00-CR-00002-1, 2020 WL 1047815, at *5 (M.D. Tenn. Mar. 4, 2020); *see also United States v. Maumau*, No. 2:08-CR-00758-TC-11, 2020 WL 806121, at *4 (D. Utah Feb. 18, 2020) ("[O]ne of the express purposes of the First Step Act was to increase the use and transparency of compassionate release.").

**A. Exhaustion requirement**

Section 3582(c)(1)(A) imposes an exhaustion requirement on the defendant, requiring him to fully exhaust all administrative rights to appeal before he may move the court for release. On May 27, 2020, Defendant filed a request for emergency compassionate release pursuant to 18 U.S.C. § 3582 with the Warden of SFCI (ECF No. 101 at 16.) On June 30, 2020, the Warden denied Defendant's request. (*Id.*) The Government does not contest the issue of exhaustion in its Opposition. (Opp.) Defendant has properly satisfied the exhaustion requirement, and the Court may adjudicate the merits of his Motion.

**B. Extraordinary and Compelling Circumstances**

Section 3582(c)(1)(A) permits a sentence reduction only upon a showing of "extraordinary and compelling reasons," and only if "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." Section 1B1. 13 of the Sentencing Guidelines further clarifies that a sentence reduction under 18 U.S.C. §(c)(1)(A) may be ordered in the event the court determines, "after considering the factors set forth in 18 U.S.C. § 3553(a), that:

> (1)(A) Extraordinary and compelling reasons warrant the reduction; . . .
> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. §3142(g); and
> (3) The reduction is consistent with this policy statement."

Application Note 1 to the Guidelines provision enumerates certain circumstances constituting "extraordinary and compelling reasons" that justify a sentence reduction, including certain medical conditions, advanced age, certain family circumstances, or some "other" reason "[a]s determined by the Director of the Bureau of Prisons." The Note stipulates that "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of correctional facility and from which he or she is not expected to recover" establishes "extraordinary and compelling reasons" in justification for compassionate release.

Defendant argues his underlying health conditions, namely his osteoporosis and poor blood circulation, are deteriorating while he is in prison and he is not receiving appropriate treatment, and that his age and race put him at a heightened risk of severe illness if he were to contract COVID-19 at SFCI. (ECF No. 101 at 6–7; ECF No. 110 at 7–8.) In addition, Defendant states that the caretaking needs of his family, particularly of his mother, who requires daily assistance and care, (ECF No. 101 at 8), and of his daughter who has recently been hospitalized for seizures and a heart attack, amount to extraordinary and compelling circumstances in favor of granting his early release from SFCI. (ECF No. 111). Defendant asserts

that he is the only one who can shoulder the caregiving needs of his mother, as other members of his family are either incapacitated or lack the time to provide care in light of other conflicting familial obligations, and that his daughter's condition underscores his need to be with his family. (ECF No. 101 at 7−8); (ECF No. 111 at 2−3). The Government argues that Defendant's conditions and circumstances – namely his health, the risk of infection with COVID-19 and subsequent serious illness, and the caretaking needs of his family – do not merit a sentencing reduction. (Opp. at 9.) The Government asserts Defendant's underlying conditions do not put him at an increased risk of harm in the event he contracts COVID-19 while at SFCI and that these conditions can be adequately maintained under the medical supervision of staff at SFCI. (Opp. at 10−11.)

Upon review of the Centers for Disease Control and Prevention's ("CDC") current list of medical conditions that have been found likely to increase an individual's susceptibility to severe effects of COVID-19, which includes "asthma, obesity, diabetes, chronic kidney disease, severe obesity, coronary artery disease, history of stroke and COPD," Defendant's asserted osteoporosis, poor blood circulation, and pre-diabetes do not clearly appear to put him at higher risk of serious health consequences in the event he contracts COVID-19. *People with Certain Medical Conditions*, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. While the Court notes that scientific knowledge about the risks associated with underlying medical conditions and an individual's increased susceptibility of severe illness from COVID-19 is constantly developing, the Court finds that Defendant has not identified a health condition that puts him at risk of serious illness should he contract COVID-19 based on the available evidence. The Court notes that Defendant, aged 59, is more susceptible to the harms of COVID-19 than those in younger age groups, as data provided by the CDC suggests that the risk of severe COVID-19 complications in adults continually increases with

age. As noted by the CDC, "people in their 50s are at higher risk for severe illness than people in their 40s. Similarly, people in their 60s or 70s are, in general, at higher risk for severe illness than people in their 50s. The greatest risk for severe illness from COVID-19 is among those aged 85 or older." *Older Adults*, Ctrs. For Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html. [1] The Court recognizes that identifying what constitutes an intolerable level of risk in this situation is a fraught exercise. But based on the facts of this case, which indicate that Defendant does not suffer from any health conditions that place Defendant at higher risk of severe illness, his age alone does not rise to the level of an extraordinary and compelling reason justifying his release.

Further, Defendant has not shown that, absent any connection to adverse COVID-19 outcomes, his alleged health issues "substantially diminish[ ] [his] ability to provide self-care within the environment of a correctional facility and from which he . . . is not expected to recover." U.S.C.G. §1B1.13 Comment n.1(A)(ii); *Perez*, 451 F. Supp. 3d at 293; *see also United States v. Weidenhamer*, No. CR1601072001PHXROS, 2019 WL 6050264, at *5 (D. Ariz. Nov. 8, 2019) ("Chronic conditions that can be managed in prison are not a sufficient basis for compassionate release); *United States v. Hernandez*, No. 1:10-CR-249 AWI, 2020 WL 5658249, at *3 (E.D. Cal. Sept. 23, 2020). Defendant argues that he has not received needed medical attention for injuries as a result of delays caused by the

---

[1] Defendant also argues that his ethnicity puts him at increased risk of harm due to COVID-19. The CDC notes that some racial and ethnic minority groups are disproportionately affected by COVID-19, but indicates that inequities in social determinants of health, rather than risk factors specific to COVID-19, are what contribute to the increased risk of infection and complications among these communities. *Health Equity Considerations and Racial and Ethnic Minority Groups*, Ctrs. For Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/community/health-equity/race-ethnicity.html; *see also United States v. Martin*, No. 2:18-CR-00124-JDL-1, 2020 WL 5752850, at *3 (D. Me. Sept. 25, 2020) ("While the CDC's analysis presents a troubling picture of the impact systemic racism has had on public health in minority communities, it does not suggest that Black individuals are otherwise inherently predisposed to COVID-19 infection and complications.").

pandemic, specifically that he has not promptly received an MRI for his shoulder injuries. (ECF No. 101 at 6, 17). However, based on the facts Defendant has provided, the Court cannot find that his ability to provide self-care has been substantially diminished while incarcerated because he is not able to receive an MRI or other medical services quickly. (*Id*. at 6–7, 17.) The Motion suggests that these are longstanding health issues, and Defendant has not provided documentation showing that they require immediate attention that he has been unable to receive at SFCI.  Accordingly, the Court finds that Defendant has not demonstrated extraordinary and compelling reasons justifying his release based on his medical conditions.

Defendant also argues that the caretaking needs of his family, specifically his mother and daughter, constitute "extraordinary and compelling reasons" in favor of his Motion. (ECF No. 101 at 7,8); (ECF No. 111 at 2-3). Though the Government does not address this argument, this Court will consider whether Defendant's alleged family circumstances amount to "extraordinary or compelling reasons" for his release.

This Court notes that, although the Sentencing Guidelines provide a basis for familial circumstances that may provide grounds for a reduction in sentence, it is not bound to consider only those circumstances explicitly included in the language of the Guidelines. *See* U.S.S.G. § 1B1.13 Application Note 1(C) (stating family circumstances include "(i) [t]he death or incapacitation of the caregiver of the defendant's minor child or minor children," and "(ii) [t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only caregiver for the spouse or registered partner"); *United States v. Yoda*, 15-CR-95 (AJN), 2020 WL 5502325, at *3 (S.D.N.Y. Sept. 11, 2020) ("[a]s other courts have noted in reference to [the family circumstances] category, 'a court may find that there exists an extraordinary and compelling reason other than those specifically enumerated in the Application notes to § 1B1.13.'") (quoting *United States v. Lisi*,

440 F. Supp. 3d 246, 251–52 (S.D.N.Y. 2020)).  Defendant's circumstances, which do not involve the incapacitation of his spouse or death or incapacitation of the caregiver to his minor child, do not fit neatly within the policy statement's application notes. (ECF Nos. 101, 111). Nonetheless, the possibility that other family circumstances may present extraordinary and compelling reasons for release is not foreclosed. *See* U.S.S.G. § 1B1.13 Application Note 1(D) (noting there may "exist[] in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)"); *Yoda*, 2020 WL 5502325, at *2 (noting "that the need to care for one's aging and sick parent may, in certain circumstances, warrant a finding that an extraordinary and compelling reason exists").

However, the Court still must be guided by the principles of the extraordinary and compelling reasons standard. For many defendants, particularly for those serving long sentences, difficult and even tragic events often occur during their incarceration, but not all can serve as bases for compassionate release. Instead, as the Application Notes to the Sentencing Guidelines suggest, there may be events in a defendant's family life that necessitate his or her release for important practical reasons.  Here, the Court finds *United States v. Lisi* instructive, as that court noted the fundamental "principle of the Family Circumstances category is that there exists an extraordinary and compelling reason for release when the defendant has a close family member who is completely unable to care for himself or herself and for whom the defendant would be the only available caregiver." *Lisi*, 440 F. Supp. 3d at 252. In *Lisi*, the court found the caregiving needs of the defendant's mother, though not explicitly included in the language of the U.S.S.G. § 1B1.13 Application Notes, were extraordinary and compelling reasons within the scope of the statute because the court "received evidence from several sources indicating that [the defendant] is the only available caregiver for his mother." *Id.* In the instant matter, however, Defendant has not specified what

particular caregiving role he would fulfill upon his release, nor has Defendant sufficiently shown that he is the only available caregiver for either his mother or daughter. (ECF No. 101 at 5); (ECF No. 111 at 2-3).

With regard to Defendant's daughter, despite the severity of her medical condition, it is unclear that Defendant's presence is needed for any particular caregiving responsibilities. Defendant has explained his daughter recently suffered from several medical issues, is currently in the intensive care unit, and remains in critical condition. (ECF No. 111 at 2.) While the Court recognizes the severity of Defendant's daughter's health condition and does not doubt that Defendant and his family are suffering as a result of these tragic circumstances, his filing indicates only that he "and his family are in need of each other during this particularly challenging time." (ECF No. 111, at 3). Without specific information as how Defendant is needed to care for his daughter, the Court cannot discern how Defendant's release would affect the care his daughter is receiving. Furthermore, although Defendant's wife suffers from moderate asthma and depression, (ECF No. 101 at 17), the Court is unable to conclude based on the evidence before it that these conditions prevent Defendant's wife from providing adequate care for their daughter.

Similarly, Defendant has failed to demonstrate that he is the only person who can care for his mother, who suffers from Alzheimer's and a heart condition. Although Defendant states that it's very hard for his stepfather, who is in his 80s, to take care of his mother, the briefing indicates that his stepfather lives with his mother and currently provides some care despite the difficulties he faces in doing so. (ECF No. 101 at 21; ECF No. 110 at 5; ECF No. 110-1, Ex. A.) Defendant's sister, despite her other caretaking responsibilities for her grandchildren, including one grandchild with special needs, "does provide some assistance to her mother." (ECF No. 110 at 6). Defendant's wife has chronic health problems and responsibility for her daughter and "two granddaughters who live in her home and

are not yet school aged," but Defendant has not specified how these circumstances render her unable to provide support. (ECF No. 110 at 6.) Although the Court does not doubt that Defendant's mother's Alzheimer's diagnosis, alongside financial difficulties, other family member's health problems, and Defendant's incarceration is a "confluence of hardship" for the family, the information presented to the Court does not indicate that Defendant's mother is entirely without care such that Defendant's release is the only available means of ensuring her wellbeing. *See Yoda*, 2020 WL 5502325 at *3 ("it is relevant, if not dispositive, that [the defendant's] father does not appear to depend exclusively on [the defendant] for care at this time").

The Court does not discount the challenges Defendant and his family are currently facing. However, the Court finds that Defendant has not presented the sort of extraordinary and compelling reasons that enable the Court to grant him compassionate release under Section 3582.

*ii. Public Safety and §3553(A) Factors*

Even if the Court were to conclude that Defendant's family circumstances or health issues weighed in favor of his release, the factors outlined in Sections 3553 and 3582 also require consideration of public safety, the seriousness of the offense, and the need to avoid unwarranted sentencing disparities. 18 U.S.C. §§ 3553(a)(2)(C); 3582(c)(1)(A)(ii). Defendant states his rehabilitation while in prison, as shown by his participation in various educational, work, and rehabilitative programs at SFCI, indicate that his time already served constitutes a sentence consistent with the 3553(a) factors and that he is not a danger to the community.[2] (ECF No. 101 at 5; ECF No. 110 at 13, 17.) Defendant also points to

---

[2] Defendant lists his accomplishments while at SFCI as extraordinary and compelling circumstances for a sentence reduction. (ECF No. 101 at 5.) The Court does not find this argument persuasive because "[p]ursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of [the] policy statement." 18 U.S.C. § 3582(c)(1)(A)(3). The Court

the "non-violent and unaggravated nature" of his offense and limited criminal history as evidence that he would not pose a danger if released. (ECF No. 110 at 17). The Government argues the Section 3553(a) factors weigh against a sentence reduction because Defendant has only served, at the time the opposition was filed, one year and one month of his 57-month sentence, and because Defendant's prior criminal history is "serious."[3] (Opp. at 5, 12.)

      Although the Court recognizes that Defendant has made significant progress in furthering his education, rehabilitation, and vocational skills while serving his sentence, the Court notes that Defendant's offense—which endangered the public by placing fentanyl and methamphetamine into the community—indicates some risk of danger to the public.  More significantly, the fact that Defendant has only served approximately 28% of his 57-month sentence suggests that releasing Defendant at the sixteen-month mark would create an unwarranted sentencing disparity between Defendant and others convicted of similar offenses and would not reflect the seriousness of the offense. The Court therefore finds that even had Defendant's circumstances qualified under the extraordinary and compelling reasons standard, a reduction of his sentence would not be justified under Sections 3582 or 3553.

\ \ \

\ \ \

---

therefore declines to consider Defendant's rehabilitation progress alone as grounds for satisfying §3582(c)(1)(A).

[3] The Government also argues that the Section 3553(a) sentencing factors weigh against release because "the disease is sadly rampant in Yuma, Arizona, where Defendant says he would return to live." (Opp. at 11). Not only is it unclear how this assertion relates to the sentencing factors, but the fact that COVID-19 is broadly circulating in a community does not render a congregate setting like a prison, given the many opportunities for introduction and rapid spread of the virus, safer than quarantining at home. *See* Lisa B. Puglisi et al., *Estimation of COVID-19 Basic Reproduction Ratio in a Large Urban Jail in the United States*, Annals of Epidemiology (Sept. 9, 2020), https://www.sciencedirect.com/science/article/pii/S1047279720303471?via%3Dihub (estimating a high reproduction ratio for COVID-19 in the jail setting and predicting that "correctional facilities will continue and community rates of infection will not decrease if jails are not a central focus of public health strategies to mitigate the spread of the epidemic").

## III. CONCLUSION

For the reasons set forth above, Defendant's Motion for compassionate release pursuant to 18 U.S.C. § 3582(c) is **DENIED**.

**IT IS SO ORDERED.**

Dated:  November 2, 2020

Hon. Gonzalo P. Curiel
United States District Judge